William JOHNSON, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (ABINGTON MEMORIAL HOSPITAL), Respondent.**

**Abington Memorial Hospital, Petitioner,**

v.

**Workers' Compensation Appeal Board (Johnson), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 15, 2002.

Decided Feb. 20, 2003.

Ralph D. Samuel, Philadelphia, for petitioner.

Audrey J. Copeland and David L. White, Newtown Square, for respondent.

Before FRIEDMAN, J., SIMPSON, J., and JIULIANTE, Senior Judge.

OPINION BY Judge SIMPSON.

This matter presents cross-appeals of William Johnson (Claimant) and Abington Memorial Hospital (Employer) from the order of the Workers' Compensation Appeal Board (Board) that affirmed and modified the decision and order of the Workers' Compensation Judge (WCJ). We reverse the Board's modification, thereby reinstating the WCJ's order as originally entered.

Claimant, a diabetic with a history of foot and kidney problems, worked as a custodian. In January 1989, a bag fell on his foot causing a needle to puncture his

skin. Claimant sought treatment from Dr. Kenneth Cohen, who diagnosed cellulitis [1] and a diabetic foot infection. Claimant began treatment and, upon medical advice, ceased working. Employer issued a notice of compensation payable acknowledging Claimant's left foot injury.

After several weeks of antibiotic therapy and follow-up treatment, Claimant returned to his duties on February 13, 1989, despite continued pain and swelling. On February 28, 1989, Employer's benefits manager called Claimant to the personnel office to receive a workers' compensation check. According to Claimant, the benefits manager informed him that the check would not be distributed unless he signed a form now known to be an agreement to stop weekly worker's compensation payments (final receipt). Claimant testified that he was not permitted to read the document, and the top portion was folded and covered with the check. Claimant later testified that he did not understand that by signing this document he was acknowledging he was fully recovered.

Following the signing of the final receipt, Claimant performed his regular duties with no loss of earnings; during this time Claimant's foot infection developed into osteomyelitis.[2] In March 1989, Claimant again ceased working and was admitted to the hospital for ten days of treatment followed by six weeks of intravenous medications administered at his home.

Claimant continued to suffer from an ulceration on his left foot. When told the foot would have to be amputated, he sought a second opinion from Dr. Steven Boc, a podiatric surgeon with a large number of diabetic patients. X-rays ordered by Dr. Boc showed a broken left foot with insensitivity in the surrounding skin.

Claimant continued treatment. The area surrounding the puncture wound became progressively worse, and the ulceration spread across Claimant's little toe and across the bottom of his foot. The toe became gangrenous and was amputated in December 1989.

In January 1990, Claimant returned to work. In February 1990, Claimant stepped on an electrical cord causing his foot to bleed profusely. Dr. Boc opined that this injury was caused by "rocker bottom foot" a condition hindering the foot's ability to bear weight caused by a combination of the diabetes, ulceration, and infection. He was hospitalized and verbally resigned his employment citing "health reasons."

In June 1992, Claimant filed a reinstatement petition alleging he was permanently and totally disabled from the January 1989 needle injury. At a May 1993 hearing, more than three years after the date to which payments were made, Claimant verbally amended his reinstatement petition to include a petition to set aside the final receipt; Employer challenged the timeliness of this petition. Subsequently, Employer filed a petition to terminate compensation benefits and a petition to review medical treatment.

Claimant presented his deposition and the deposition of Dr. Boc. Claimant testified about the circumstances of his injury and the signing of the final receipt. Dr. Boc testified about Claimant's treatment,

---

1. Cellulitis is a skin infection that spreads from the skin to underlying tissues.

2. Osteomyelitis is the inflammation of bone caused by a bacterial infection such as cellulitis.

and opined that Claimant was completely disabled, stating "the conditions that he [Claimant] has now are an aggravation of his previous problems, caused by the [February 1990] trauma." R.R. at 32a. He also stated that it was his opinion that Claimant continued to suffer from the January 1989 work injury when he signed the final receipt. R.R. at 33a.

Employer presented the deposition testimony of Frank Cummings, its Director of Employee Benefits. Cummings was unsure whether he was the person who requested Claimant sign the final receipt. He testified that generally he gave every employee the opportunity to read the form before signing it, but admitted he did not explain the content or ramifications of the form when presenting it to employees.

Accepting the opinion of Dr. Boc and parts of Claimant's testimony, the WCJ granted Claimant's petition to reinstate benefits and set aside the final receipt. Further, finding that Employer failed to meet its burden to show that Claimant was fully recovered, she denied Employer's petition to terminate compensation benefits and its petition to review medical treatment.

On appeal, the Board affirmed the WCJ's setting aside the final receipt, but modified the time of compensable disability, limiting it to March 1989 through May 1989. The Board reasoned that Dr. Boc's testimony regarding Claimant's osteomyelitis was equivocal and did not support an award of benefits beyond May 1989. Further, the Board found that "Dr. Boc never related Claimant's ongoing condition or disability to the puncture incident in January, 1989 over Claimant's advanced diabetes." Board Op. at 5. Both parties now appeal to this Court.[3]

The cross appeals generally involve two issues: whether the final receipt should have been set aside and compensation reinstated; and to what extent Dr. Boc's testimony supports a finding of continuing disability caused by the January 1989 needle injury.

## I.

■ Regarding the final receipt, Employer challenges the factual bases for setting it aside, contending that Claimant was not disabled when the final receipt was signed and that the WCJ made no finding of fault or improper conduct in the inducement of its execution. Also, Employer challenges the legality of setting aside the final receipt by petition more than three years after the date to which compensation payments were made, in apparent violation of Section 434 of the Workers' Compensation Act (Act).[4]

■ Generally, a final receipt may be set aside where the claimant is not fully

---

3. This Court's scope of review of a Board's decision is limited to determining whether an error of law was committed, findings of fact were supported by substantial evidence or constitutional rights were violated. Administrative Agency Law, 2 Pa.C.S. § 704; *Vinglinsky v. Workmen's Comp. Appeal Bd. (Penn Installation)*, 139 Pa.Cmwlth. 15, 589 A.2d 291 (1991).

4. Act of June 2, 1915, P.L. 736, *added by* Section 434 of the Act of June 26, 1919, P.L. 642, *as amended*, 77 P.S. § 1001, stating (with emphasis added):

 A final receipt, given by an employe or dependent entitled to compensation under a compensation agreement notice or award, shall be prima facie evidence of the termination of the employer's liability to pay compensation under such agreement notice or award: Provided, however, That a referee designated by the department may, *at any time within three years from the date to which payments have been made,* set aside a final receipt, upon petition filed with the

recovered from a work injury. 34 Pa.Code § 121.17(a) (final receipt appropriate for termination but not suspension). More is required, however, to set aside a final receipt beyond the three year limitation period set forth in Section 434. Here, setting aside the final receipt is based on Employer's allegedly improper conduct in inducing the Claimant to sign it. *See Cooney v. Workers' Comp. Appeal Bd. (St. Joseph's Ctr.),* 776 A.2d 1046 (Pa.Cmwlth.2001); *Crawford v. Workmen's Comp. Appeal Bd. (Peugot Contracting),* 134 Pa.Cmwlth. 89, 577 A.2d 966 (1990); *Auerbach v. Workmen's Comp. Appeal Bd. (Auerbach),* 80 Pa.Cmwlth. 301, 471 A.2d 596 (1984). These cases set forth the legal principle that a final receipt may be set aside beyond the statutory period of limitations where it was obtained by fraud, intentional or unintentional deception or other improper conduct of the employer.

In *Cooney* the defendant sent the claimant multiple copies of the final receipt. The claimant, who was receiving ongoing medical treatment, signed the final receipt only to avoid litigation after being assured that payment of her medical expenses would continue. We concluded that presentation of a final receipt to a claimant known to receive ongoing medical treatment was the equivalent of fraud sufficient to set aside a final receipt beyond the three year period of Section 434.

In *Crawford,* the claimant neither understood the meaning of the final receipt nor was given an explanation of its meaning. He was reluctant to sign it because he had not completely healed. A referee found the defendant knew the claimant continued to suffer effects of his injury and

had not returned to his previous employment, yet it badgered the claimant until he signed the final receipt. The final receipt was found to have been obtained by fraud and was set aside beyond the three-year limitation period.

The final receipt here was signed in February 1989. The WCJ found the Claimant continued to suffer effects from the needle injury at this time. The circumstances under which the final receipt was executed were contested. The WCJ made the following dispositive findings regarding the document's execution:

24. Claimant's testimony is credible that he was required to sign the Final Receipt before he could receive his check and that he did not know the significance of the Final Receipt when he signed it to receive his check.

25. Based upon a review of the evidentiary record as a whole, this Judge finds the testimony of Frank Cummings persuasive and credible that he does not explain the effects of a Final Receipt to employees nor Claimant.

WCJ Op. at 7, Findings of Fact 24, 25.

In *Auerbach,* a referee concluded that the claimant suffered "an unintentional deception" that permitted setting aside a 1973 final receipt by petition filed in 1977. The referee found that the significance of the final receipt was not explained to the claimant and that the claimant did not know exactly what he was signing. When we reviewed the Board's reversal of the referee's decision, we held:

*There is no evidence in this record that the claimant's employer obtained the fi-*

department, or on the department's own motion, if it be shown that all disability due

to the injury in fact had not terminated.

*nal receipt by improper means such as representing that the final receipt was a receipt only for the last compensation check which the claimant was required to sign in order to receive the check.* The referee's findings are only to the effect that the significance of the final receipt was not explained to the claimant and that the claimant did not know exactly what he was signing. These findings do not support the referee's conclusion that the claimant signed the receipt as the result of deception.

*Auerbach,* 471 A.2d at 598 (emphasis added). Accordingly, we affirmed the Board's decision.

Here, unlike in *Auerbach,* there is a finding that Claimant was required to sign the final receipt before he could receive his check. This finding is supported by Claimant's testimony. While failure to inform a claimant of the significance of a final receipt is not deception, inaccurately informing a claimant that he must sign a final receipt in order to receive a compensation check is improper conduct which will support setting aside a final receipt beyond the three-year period set forth in Section 434 of the Act. In this regard, and because Claimant was not fully recovered when he signed the final receipt, the Board's order is affirmed.

## II.

■ Claimant argues that the Board erred in determining Dr. Boc's testimony equivocal. On cross-appeal, Employer asserts that the Board was correct in finding the testimony equivocal, but erred in allowing it to support the reinstatement of any benefits.[5]

■ Whether medical testimony is unequivocal is a question of law fully reviewable on appeal. *Terek v. Workmen's Comp. Appeal Bd. (Somerset Welding & Steel, Inc.),* 542 Pa. 453, 668 A.2d 131 (1995).

In *Philadelphia Coll. of Osteopathic Med. v. Workmen's Comp. Appeal Bd. (Lucas),* 77 Pa.Cmwlth. 202, 465 A.2d 132, 134 (1983), this Court stated that unequivocal medical testimony is "testimony that the claimant's condition in the expert's professional opinion did [in fact] come from the work experience." In describing what constituted unequivocal medical testimony, this Court further explained that:

[I]t is not the law, as it has been sometimes argued, that every utterance which escapes the lips of a medical witness on a medical subject, must be certain, positive, and without reservation, exception, or peradventure of a doubt. We repeat, that as to facts which a claimant must prove by medical evidence, it is sufficient that his medical expert, after providing a foundation, testify that in his professional opinion or that he believes or that he thinks the facts exist. *The claimant has, in such event, produced competent evidence of the facts which, if accepted by the factfinder will support an award, even if the*

---

5. Because the WCJ properly set aside the final receipt, the reinstatement petition is treated as requesting a reinstatement following a suspension of benefits, not a termination. As such, a presumption exists that Claimant's original disability continues. Thus, Claimant need only prove that (i) his earning power is adversely affected by his disability through no fault of his own, and (ii) the disability that gave rise to his original claim continues. *Stevens v. Workers' Comp. Appeal Bd. (Consolidation Coal Co.),* 563 Pa. 297, 760 A.2d 369 (2000); *Pieper v. Ametek–Thermox Instruments Div.,* 526 Pa. 25, 584 A.2d 301 (1990).

*medical witness admits to uncertainty, reservation, doubt or lack of information with respect to medical and scientific details; so long as the witness does not recant the opinion or belief first expressed.*

465 A.2d at 134–135 (emphasis added).

 Further, in reviewing an expert's testimony, it must be taken as a whole, and a final decision "should not rest upon a few words taken out of the context of the entire testimony." *Lewis v. Commonwealth,* 508 Pa. 360, 366, 498 A.2d 800, 803 (1985). "[T]he requirement that medical evidence be unequivocal cannot reasonably be viewed as a demand for perfect testimony from members of the medical profession." *Children's Hosp. of Philadelphia v. Workmen's Comp. Appeal Bd. (Washington),* 120 Pa.Cmwlth. 1, 547 A.2d 870, 872 (1988).

The Board found Dr. Boc's testimony regarding Claimant's osteomyelitis inconsistent and, as a result, equivocal. In addition to the inconsistencies relied upon by the Board, Employer argues that Dr. Boc's causation testimony was equivocal because he referred to Claimant's 1990 incident both as an aggravation of a pre-existing injury and as a new injury. R.R. at 28a, 31a–32a, 34a.

Admittedly, this complex factual background creates difficult causation questions. Nevertheless, we conclude Dr. Boc rendered an unequivocal opinion that Claimant's January 1989 work injury caused an infection that continued through 1989 and resulted in the eventual amputation of a portion of his foot. R.R. at 78a–79a. Further, Dr. Boc described how the puncture wound set in motion a series of changes in Claimant's foot that eventually resulted in complete debilitation. R.R. at 26a–28a, 71a–72a. "Questions of credibility and the resolution of conflicting testimony, arising from a witness' inconsistent testimony or from the conflicting testimony of two or more witnesses, are within the province of the WCJ." *Rocco v. Workers' Comp. Appeal Bd. (Parkside Realty Constr.),* 725 A.2d 239, 244 (Pa.Cmwlth. 1999). Considering the foregoing authority, the Board's determination that Dr. Boc's causal relationship testimony was equivocal because it contained inconsistencies is an error of law. Concomitantly, the Board's reduction of time of compensable disability is reversed, and the WCJ's order is reinstated.

### ORDER

AND NOW, this 20th day of February, 2003, the Workers' Compensation Appeal Board's order setting aside the final receipt and reinstating compensation is affirmed in part and reversed in part. That portion of the Board's order modifying the period of compensation is reversed; the remainder of the order is affirmed. Accordingly, the order of Worker's Compensation Judge Lincicome is hereby reinstated.