IN THE COMMONWEALTH COURT OF PENNSYLVANIA

US Airways, Inc., through its insurer :
New Hampshire Insurance Company :
and Sedgwick Claims Management :
Services, :
                Petitioners :
                 :
            v. : No. 1476 C.D. 2017
                 : Submitted: March 16, 2018
Workers' Compensation Appeal :
Board (Uram), :
                Respondent :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI             FILED: April 9, 2018

       American Airlines, Inc., previously U.S. Airways, Inc., (Employer) petitions for review of the Workers' Compensation Appeal Board's (Board) decision affirming a workers' compensation judge's (WCJ) order granting Michael Uram's (Claimant) Review Petition to amend his work injury to include an aggravation of avascular necrosis and degenerative joint disease[1] as well as

---

[1] Avascular necrosis is the pathologic death of a portion of tissue due to deficient blood supply, resulting in irreversible damage. Stedman's Medical Dictionary, 25th Edition, Williams & Wilkins (1990), pp. 1026 - 1027.

affirming the denial of Employer's Termination and Suspension Petition. For the following reasons, we affirm.

## I.

Claimant began employment with Employer in 1979 as a ramp agent/baggage handler. In December 2014, Claimant suffered a work injury and was unable to work from January 19, 2015, to June 22, 2015. A Notice of Temporary Compensation Payable was issued describing the injury as a "right groin sprain/strain." (Reproduced Record (R.R.) at 1a.) Following Claimant's return to work, the Department of Labor & Industry (Department) issued a Notification of Suspension. Claimant then filed an Employee Challenge to the Notification of Suspension.

On September 18, 2015, Employer filed a Termination and Suspension Petition alleging that Claimant was fully recovered and capable of returning to work without restriction. On November 2, 2015, the parties entered into a Supplemental Agreement providing that Claimant was restricted by his treating physician to working 40 hours per week without overtime. Claimant was to receive weekly partial disability benefits in the amount of $512.63 to compensate him for the loss of overtime wages. The Supplemental Agreement only resolved the Employee Challenge and did not address Employer's Termination and Suspension Petition.

On December 11, 2015, Claimant filed a Petition to Review seeking to amend the description of his work injury to include an aggravation of underlying

avascular necrosis and early degenerative joint disease of the right hip. Employer filed an answer denying all material averments.

Before the WCJ, Claimant testified that he was working in the area where the bags came down from the ticket counter onto a carousel. When he lifted a bag off the carousel to put it on the top shelf of a baggage cart, he twisted and felt a pull in his hip. He went on to testify that he still experiences jabbing and shooting pains down his leg, back and buttocks and that it increases with activity.

To support the notion that the injury was work-related, Claimant's treating physician, Michael R. Pagnotto, M.D. (Dr. Pagnotto), a board certified orthopedic surgeon who specializes in the treatment of hip and knee arthritis, testified that Claimant's right hip injury was caused by avascular necrosis, opining:

> Yes, I felt that this was a right hip avascular necrosis with a small area of femoral head collapse.
>
> At that time, I felt that this avascular necrosis was aggravated by his work-related injury, which caused the small fracture of the femoral head, which is – you know we use the word fracture here, but really when you have avascular necrosis, you have bone that has lost its blood supply and so what you are really looking at is collapse. When the bone loses its blood supply, the bone can start to crumble. So most people, when they hear fracture, they think you know that you broke a bone in a car accident or you know fell and twisted, but this is more of what I was referring to in my note, that he had this small area of, small quote fracture in the femoral head.
>
> I said given that his mechanism, that it didn't make sense that he would truly have an acute fracture as much as avascular necrosis with a little bit of collapse.

3

(R.R. at 109a-110a.) He went on to testify that it was not a groin sprain or strain because the MRI did not show any evidence of an injury to Claimant's muscles, but it did show evidence of an injury to his femoral head, which was an aggravation of his underlying avascular necrosis.

Regarding Dr. Pagnotto's recommendation that Claimant be restricted to working no more than 40 hours per week, the doctor testified that two MRIs showed significant hip pathology and that working more than 40 hours per week would aggravate Claimant's hip and cause him pain.

In opposition, Employer offered the testimony of William D. Abraham, M.D. (Dr. Abraham), also a board certified orthopedic surgeon. Based on his examination, Dr. Abraham disagreed with Dr. Pagnotto's diagnosis that Claimant's condition was the result of his avascular necrosis having been aggravated at work. He did not deny that Claimant had both degenerative joint disease and avascular necrosis, but opined that both conditions were pre-existing and that there was no evidence that the work injury aggravated or substantially changed the prognosis of those pre-existing conditions. Dr. Abraham opined that the injury could best be described as a groin sprain or strain. He then explained how he arrived at the conclusion that the work injury did not affect the avascular necrosis or the underlying degenerative joint disease.

> [I]t's my opinion, so we can all accept that it's an opinion, and to look at that and sort of make a conclusion, but I think it would make sense, and here's my rationale, one was that I don't think there's any denying that these particular conditions were pre-existing this date. There's certainly nothing about lifting bags on

4

that particular day that caused arthritis, we can all accept that that's a process that's been ongoing for a long period of time. And similarly, the avascular necrosis is not a process that would be created as a result of lifting a fifty- or sixty-pound bag. So I think that to me those are givens. So then the real question is what happened on that particular day and was there anything to suggest that he had anything more than a groin strain? **And I arrived at that diagnosis based really on sort of a generic sense that this gentleman had lifted, he had what I would describe as a soft-tissue injury, that's the strain in the groin, that's where he had his pain, and that injury, as I said, went on to satisfactory recovery.**

(R.R. at 181a-182a) (emphasis added).

The WCJ denied Employer's Termination and Suspension Petition and granted Claimant's Petition to Review. In so doing, the WCJ accepted the testimony of Dr. Pagnotto to be more credible than Dr. Abraham's testimony. The WCJ rejected Dr. Abraham's testimony where it conflicted with Dr. Pagnotto. In finding Dr. Abraham to be less credible, the WCJ noted that Dr. Abraham only examined Claimant once and diagnosed him with a groin strain even though the diagnostic studies did not support this opinion. The WCJ also noted that Dr. Abraham repeatedly discussed how the condition of avascular necrosis was not caused by the work injury even though that was not at issue, the true issue being whether Claimant's pre-existing injury was aggravated by the work injury.

5

Employer appealed the WCJ's decision and the Board affirmed. This petition for review followed.[2]

## II.

## A.

Employer argues that the WCJ erred by capriciously disregarding the substantial competent evidence presented by Employer's expert, Dr. Abraham, and instead relied upon the equivocal and legally incompetent opinions of Claimant's expert, Dr. Pagnotto, in finding that Claimant had met his burden of proof.

What Employer's argument ignores is that it is not within our scope of review to judge the probative value of testimony even if, on the same record, we might reach a different result. *American Chain & Cable Co. v. Workmen's Compensation Appeal Board*, 391 A.2d 50 (Pa. Cmwlth. 1978). As we have held repeatedly, it is up to the WCJ to determine the credibility and weight of the evidence presented. *Container Corporation of America v. Workmen's Compensation Appeal Board*, 429 A.2d 1264, 1267 (Pa. Cmwlth. 1981). In so doing, the WCJ may accept or reject the testimony of any witness in whole or in part, including the testimony of medical witnesses. *Id.*

---

[2] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether a necessary finding of fact was unsupported by substantial evidence. *American Refrigerator Equipment Company v. Workmen's Compensation Appeal Board*, 377 A.2d 1007 (Pa. Cmwlth. 1977).

Because we may not reweigh evidence and because it was fully within the WCJ's power to make the credibility determinations she made as well as to assign the proper weight of the evidence presented based upon those determinations, we may not disturb a WCJ's decision if substantial evidence supports those findings.

**B.**

Employer contends that there is not substantial evidence to support the WCJ's denial of its Termination and Suspension Petition because Dr. Pagnotto's testimony that Claimant has not fully recovered from his work-related injury is equivocal.[3]  Employer notes that it is undisputed that the MRIs and X-rays indicated that by April 2015, any sign of fracture or bone collapse attributed to the work injury had resolved itself and, therefore, the WCJ should have granted the Termination and Suspension Petition.

Employer contends that the only reason its Termination and Suspension Petition was not granted was because the WCJ relied on Dr. Pagnotto's

---

[3] An employer seeking to terminate workers' compensation benefits bears the burden of proving either that the employee's disability has ceased or that any current disability arises from a cause unrelated to the employee's work injury. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.),* 705 A.2d 1290, 1293 (Pa. 1997).  The employer meets this burden when its

> medical expert unequivocally testified that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury.

*Id.*

7

equivocal testimony. For example, when asked if there was any evidence of fracture or collapse in Claimant's hip, Dr. Pagnotto answered: "So, there was no evidence of ongoing fracture, yes. I would argue that he probably still had some degree of collapse because it's pretty rare that someone who has a small area of collapse spontaneously heals that." (R.R. at 139a.) Employer contends that testimony such as this, that Claimant "probably still had some degree of collapse," renders Dr. Pagnotto's entire testimony equivocal because it is not sufficiently definitive and, therefore, it is incompetent.

Medical testimony is incompetent if it is equivocal. *Kurtz v. Workers' Compensation Appeal Board (Waynesburg College)*, 794 A.2d 443 (Pa. Cmwlth. 2002). A court will find medical testimony to be unequivocal and competent if the medical expert, after providing a foundation, testifies that in his professional opinion, he believes a certain fact or condition exists. *Johnson v. Workers' Compensation Appeal Board (Abington Memorial Hospital)*, 816 A.2d 1262, 1267 (Pa. Cmwlth. 2003). A court will consider medical testimony equivocal if it is found to be based upon mere possibilities. *Signorini v. Workmen's Compensation Appeal Board (United Parcel Service)*, 664 A.2d 672 (Pa. Cmwlth. 1995). In determining whether medical testimony is unequivocal, the medical witness's entire testimony must be reviewed and taken as a whole. *Indian Creek Supply v. Workers' Compensation Appeal Board (Anderson)*, 729 A.2d 157, 160 (Pa. Cmwlth. 1999). Whether medical testimony is unequivocal is a question of law fully reviewable on appeal. *Johnson*, 816 A.2d at 1267.

8

The use of terms such as "might have been," "could have been," or "probably" is an indicator that the offered opinion is equivocal. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 472 A.2d 1176, 1178 (Pa. Cmwlth. 1984). However, there is no requirement that every utterance which escapes the lips of a medical witness on a medical subject must be certain, positive and without reservation, exception or peradventure of doubt. *Heath v. Workmen's Compensation Appeal Board (Agway, Inc.),* 514 A.2d 1021, 1023 (Pa. Cmwlth. 1986). The claimant has produced competent evidence to support an award even if the medical witness admits to uncertainty, reservation or lack of information with respect to specific details, so long as the expert does not recant the opinion or belief first expressed. *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 465 A.2d 132 (Pa. Cmwlth. 1983).

Although Dr. Pagnotto's statement that he "would argue [Claimant] probably still had some degree of collapse" is equivocal, it is an isolated statement. Throughout his testimony, Dr. Pagnotto consistently opined that Claimant's work injury caused an aggravation of pre-existing avascular necrosis with secondary degenerative joint disease, which would render a 40 hour per week limitation a reasonable accommodation. Furthermore, Dr. Pagnotto never recanted his medical opinion. Therefore, Dr. Pagnotto's testimony was unequivocal and competent.

**C.**

Employer also argues that the WCJ did not issue a reasoned decision because she failed to address competent conflicting evidence and reconcile the material contradictions in the record.

When faced with conflicting evidence, the WCJ must adequately explain the reasons for rejecting or discrediting competent evidence. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1047 (Pa. 2003). A reasoned decision includes an explanation of why certain testimony is rejected and other testimony is accepted. *See PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchison)*, 717 A.2d 1086, 1088 (Pa. Cmwlth. 1998) (holding that the decision was reasoned where the WCJ credited claimant's medical expert because of his experience and familiarity with treating claimant, and rejected the testimony of employer's medical expert because the expert only saw the claimant twice).

In this case, the WCJ clearly explained her reasons for finding Claimant's expert more credible than Employer's, including the fact that Claimant's expert was his treating physician who had seen Claimant on many different occasions and Employer's expert only saw him once. In doing so, the WCJ reasoned:

> Dr. Pagnotto has had the benefit of evaluating and treating the Claimant on multiple occasions since February 19, 2015. I note that both doctors agreed that the Claimant's avascular necrosis pre-existed the work injury and was not directly caused by the work injury. However, the Claimant was asymptomatic and unaware

10

that he even had avascular necrosis prior to the work injury. Dr. Pagnotto credibly opined that the Claimant suffered an aggravation to his pre-existing avascular necrosis as a result of the work injury that occurred on December 29, 2014, and that the aggravation of that condition continues. He credibly explained how the MRI findings support his opinion. In fact, he noticed a discrepancy between the reading of the MRI and that of the radiologist, who originally noted a fracture. Dr. Pagnotto credibly explained that Claimant did not actually have a fracture, in the traditional meaning, but rather a femoral head collapse which supports his opinion that there was aggravation of the avascular necrosis. Dr. Pagnotto credibly explained that although the mechanism of injury was a relatively low energy event, it was enough to cause the femoral head collapse that was evident on the MRIs, because the Claimant's hip was already bad due to the underlying avascular necrosis and arthritis.

(R.R. at 236a.)

The WCJ also reasoned that both Dr. Pagnotto and Dr. Abraham agreed that Claimant suffered from avascular necrosis, but Dr. Abraham's core argument – that the avascular necrosis was not caused by a work injury – was irrelevant in this matter as the question was whether the avascular necrosis was *aggravated* by the work injury.

Given that the WCJ adequately explained why she accepted Claimant's expert as more credible than Employer's expert, her opinion, without further elucidation, allows us to conduct adequate appellate review and, therefore, the decision is reasoned.

11

For the foregoing reasons, we affirm the Board's decision.


_____

DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

US Airways, Inc., through its insurer : 
New Hampshire Insurance Company : 
and Sedgwick Claims Management : 
Services, : 
              Petitioners : 
               : 
        v. : No. 1476 C.D. 2017
               : 
Workers' Compensation Appeal : 
Board (Uram), : 
              Respondent : 

# **O R D E R**

AND NOW, this 9th day of April, 2018, the Workers' Compensation Appeal Board's order dated September 22, 2017, is affirmed.

_____
DAN PELLEGRINI, Senior Judge