IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Monica Niculcea,                          :
                              Petitioner  :
                                          :
            v.                            :   No. 968 C.D. 2018
                                          :   Submitted: February 1, 2019
Workers' Compensation Appeal              :
Board (Stone Ridge Retirement             :
Living),                                  :
                              Respondent  :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE SIMPSON                        FILED: March 27, 2019


          Monica Niculcea (Claimant), representing herself, petitions for review

from an order of the Workers' Compensation Appeal Board (Board) affirming the

decision[1] of a Workers' Compensation Judge (WCJ).  The WCJ granted in part and

denied in part a claim petition filed by Claimant.  The WCJ denied and dismissed

Claimant's reinstatement petition, review petition, and penalty petition.  The WCJ

granted the termination petition filed by Claimant's former employer, Stone Ridge

Retirement Living (Employer).[2]  On appeal, the Board affirmed the WCJ's decisions.

Upon review, we affirm the Board's order.

---

[1] The Workers' Compensation Judge (WCJ) issued two identical decisions on the same date, both of which are subjects of the same petition for review.  For convenience, we treat them as a single decision.

[2] The WCJ also made additional rulings not at issue before this Court.

## I. Background

Claimant sustained a work injury in March 2013. WCJ's Op., 6/21/17, Finding of Fact (F.F.) No. 3. Employer's corrected Notice of Compensation Payable (NCP) listed Claimant's accepted injuries as a right hamstring strain and a contusion of the sciatic nerve (Back Injury). F.F. No. 4.

Claimant was off work until May 2013, at which time she returned to work for Employer on modified duty in a sedentary position. F.F. No. 9. Employer suspended Claimant's workers' compensation benefits as of the date of her return. F.F. No. 5.

A few days after returning to work, Claimant injured her right knee when she struck it against a chair at work (Knee Injury). F.F. No. 6. She continued working until June 2013, after which she alleged she was once again unable to work because of her Back Injury. Id.

Claimant returned to work in November 2013 on modified duty. F.F. No. 10. She continued working until April 2014. Id.

Claimant continued receiving treatment for her back. In April 2015, she underwent lumbar surgery, which she stated gave her some relief of her pain and symptoms. F.F. No. 11.

Claimant filed several petitions under the Workers' Compensation Act (Act)[3] relating to her injuries. She filed a claim petition concerning her Knee Injury; a review petition seeking to amend the description of her accepted Back Injury to include low back injury and low back surgery; a reinstatement petition seeking benefits for total disability resulting from the Back Injury beginning in March 2015; and a penalty petition based on Employer's failure to pay certain medical bills relating to the Back Injury.[4]

Employer filed a termination petition seeking to terminate workers' compensation benefits for the Back Injury. Employer contended Claimant fully recovered from her Back Injury as of April 2016. Employer also opposed Claimant's several petitions.

The WCJ weighed medical evidence presented by both parties in support of their respective positions and then issued lengthy and detailed findings.

## A. Back Injury
### 1. Claimant's Medical Evidence

In support of her review and reinstatement petitions, and in opposition to Employer's termination petition, Claimant presented expert medical testimony from Dr. Jeffrey F. Shall (Claimant's Spine Expert), a licensed physician and board-certified orthopedic surgeon with sub-specialties in spine surgery, minimally invasive spine surgery, and joint replacement. F.F. No. 15. Claimant's Spine Expert

---

[3] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1-1041.4, 2501-2710.

[4] Claimant filed a previous claim petition relating to her March 2013 injury (Back Injury). That petition was the subject of a separate proceeding and is not at issue before this Court.

first saw her in April 2015, two years after her Back Injury. F.F. No. 16. At that time, he performed a surgical decompression of the nerve roots at the L4 and L5 levels of Claimant's spine. F.F. at No. 18. He did not see Claimant thereafter, but stated it was his understanding that the surgery gave her significant pain relief. Id. Claimant's Spine Expert opined that Claimant's spine condition was caused by the Back Injury, the surgery was reasonable and necessary, and Claimant was able to return to work after the surgery with a permanent restriction against lifting more than 20 to 25 pounds. F.F. No. 19.

Additionally, Claimant presented documentary evidence of Employer's failure to pay bills incurred from August to October 2016 for physical therapy. F.F. No. 20.

### 2. Employer's Medical Evidence

Employer presented testimony from Dr. Michael F. Lupinacci (Employer's Medical Expert), a licensed physician who is board-certified in physical medicine and rehabilitation, as well as pain management. F.F. No. 24. Employer's Medical Expert performed his first independent medical examination (IME) of Claimant in September 2013. F.F. No. 25. Employer's Medical Expert also reviewed a magnetic resonance imaging study (MRI) performed in May 2013. F.F. No. 27. The MRI showed a bulging disc with a small protrusion and annular fissure at L5-S1, but no significant stenosis of Claimant's spinal canal, and no significant narrowing of the neural foramina at L4-L5 or L5-S1. Id. In addition, Employer's Medical Expert reviewed an electromyogram and nerve conduction study performed in March 2013. Id. That study showed mild irritability in Claimant's paraspinal muscles, but no radiculopathy and no significant damage to the sciatic nerve. Id.

4

Based on his examination and review of Claimant's medical records, Employer's Medical Expert opined that as of September 2013, Claimant suffered from a contusion and neuritis in her right sciatic nerve, as well as a strain syndrome of the adductor muscle in her right hip. F.F. No. 28. Employer's Medical Expert stated those conditions resulted from the Back Injury, and Claimant was not yet fully recovered, but she could perform sedentary work. Id.

Subsequently, Employer's Medical Expert performed a second IME of Claimant in April 2016. F.F. No. 29. At that time, Claimant provided a medical history indicating she was "pain free" six months after her back surgery, although she stated she had significant pain in her tailbone. Id.

Employer's Medical Expert also reviewed additional studies. A July 2014 MRI showed no stenosis of the spinal canal, no narrowing of the neural foramina, and no inflammation of the L4 or L5 nerve root. F.F. No. 31. A March 2015 MRI of Claimant's spine at L4-L5 was normal, with no disc herniation, spinal stenosis, neural foraminal stenosis, or significant facet osteoarthritis. Id.

Based on his second IME of Claimant and the additional medical studies he reviewed, Employer's Medical Expert updated his previous opinion. He testified that Claimant did not sustain a contusion to her L4 or L5 nerve root, and she sustained no chronic radiculitis or other spine injury as a result of her Back Injury. F.F. No. 32. Employer's Medical Expert opined that Claimant did not require any surgery in April 2015. Further, Employer's Medical Expert stated Claimant was fully recovered from her Back Injury as of the date of his second IME,

5

required no further medical treatment, and was capable of returning to full time work.  Id.

## B. Knee Injury
### 1. Claimant's Medical Evidence

Claimant offered no expert testimony in support of her claim petition relating to her Knee Injury.  She offered medical records from MedExpress Lebanon, where a nurse practitioner examined Claimant the day after she bumped her knee.  F.F. No. 13.  The report reflected Claimant's indication of pain in her right knee and shin, along with some numbness from her shin to her toes.  Id.  Claimant was released to return to work.  Id.

Claimant also offered an undated medical report from Dr. Paul S. Brockman (Claimant's Rehabilitation Expert), a physician who is board-certified in physical medicine and rehabilitation.  F.F. No. 14; Certified Record, Item #35.  Claimant's Rehabilitation Expert opined that Claimant's preexisting arthritis and morbid obesity contributed to her knee pain.  F.F. No. 14.  The Knee Injury aggravated it, but persistent symptoms would likely be the result of the arthritis and obesity.  Id.  Claimant's Rehabilitation Expert also indicated the Back Injury and Knee Injury caused overlapping problems that he could not accurately separate.  Id.

### 2. Employer's Medical Evidence

Employer offered deposition testimony from Claimant's chiropractor, Dr. Donna M. Kulp, who specifically stated she provided treatment to Claimant relating to the Back injury, but not relating to the Knee Injury.  F.F. Nos. 22-23.  Rather, she referred Claimant to an orthopedist for knee treatment.  Id.

6

Employer's Medical Expert examined Claimant's knee during his second IME in April 2016. Employer's Medical Expert opined Claimant did not sustain any injury to her right knee when she bumped it in May 2013. F.F. No. 32. Employer's Medical Expert testified that an August 2013 MRI revealed severe pre-existing degenerative arthritis in Claimant's right knee. Id. He specifically stated Claimant did not incur any aggravation of her preexisting arthritis as a result of the Knee Injury. Id.

### C. WCJ's Decision
### 1. Back Injury

After reviewing all the evidence, the WCJ credited the testimony of Employer's Expert Witness and rejected the testimony of Claimant's Spine Expert. F.F. Nos. 37-38. Specifically, in rejecting the testimony of Claimant's Spine Expert, the WCJ observed that Claimant's Spine Expert did not review the records concerning Claimant's medical treatment in the months immediately following the Back Injury. F.F. No. 37a. Neither did he review the reports concerning Claimant's May 2013 and July 2014 MRI studies, both of which reflected an absence of any physical evidence supporting a significant injury. F.F. No. 37a-b. Further, as discussed by Employer's Medical Expert, an MRI study in March 2015 also failed to show any significant damage to Claimant's back. F.F. No. 37c. Similarly, electrodiagnostic studies in March 2013 and April 2014 failed to show any evidence of injury. F.F. No. 37d. Thus, the various diagnostic studies uniformly supported the position of Employer's Medical Expert rather than Claimant's Spine Expert.

The WCJ likewise accepted the testimony of Employer's Medical Expert and rejected that of Claimant's Spinal Expert concerning Claimant's recovery

7

from the Back Injury as of April 2016, when Employer's Medical Expert performed his second IME of Claimant. F.F. No. 38. The WCJ observed that the record showed both Claimant's reported symptoms and the objective findings of Employer's Medical Expert in his April 2016 examination indicated Claimant recovered from the Back Injury by that time. Id. By contrast, although Claimant's Spinal Expert was not deposed until October 2016, he never saw or examined Claimant at any time after her April 2015 surgery. Id.

## 2. Knee Injury

The WCJ credited Claimant's testimony that she sustained the Knee Injury. F.F. Nos. 35-36. However, after reviewing all the evidence, the WCJ observed that Claimant presented no medical evidence or testimony to support any inability to perform her sedentary position with Employer as a result of the Knee Injury. Id. Specifically, the WCJ found that when Claimant stopped working in June 2013, she did so on the advice of her chiropractor, who was treating her in relation to the Back Injury, not the Knee Injury. Id. Moreover, Claimant's Rehabilitation Expert acknowledged Claimant's severe preexisting degenerative arthritis in her knee. Id. Accordingly, the WCJ found Claimant was not entitled to any wage loss benefits as a result of the Knee Injury. Id.; Conclusions of Law (C.L.) Nos. 5-6. However, the WCJ found Claimant did sustain an injury and was entitled to payment of her reasonable and necessary medical expenses arising from that injury. F.F. No. 36; C.L. Nos. 3, 7.

8

## II. Issue

On appeal,[5] Claimant contends she met her burden of proof concerning her various petitions,[6] while Employer failed to sustain its burden. Claimant's arguments in her uncounseled brief are difficult to discern. However, all of the issues she raises on appeal appear to relate to one central argument that the WCJ weighed the evidence incorrectly regarding both the Back Injury and the Knee Injury.

## III. Discussion

Claimant bore the burden of proof in each of her petitions. See Cruz v. Workers' Comp. Appeal Bd. (Kennett Square Specialties), 99 A.3d 397 (Pa. 2014) (claim petition); Jeanes Hosp. v. Workers' Comp. Appeal Bd. (Hass), 872 A.2d 159 (Pa. 2005), overruled in part on other grounds by Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill), 975 A.2d 577 (Pa. 2009) (review petition); Baumann v. Workers' Comp. Appeal Bd. (Kellogg Co.), 147 A.3d 1283 (Pa. Cmwlth. 2016) (penalty petition); Ward v. Workers' Comp. Appeal Bd. (City of Phila.), 966 A.2d 1159 (Pa. Cmwlth. 2009) (reinstatement petition).

To support its termination petition, Employer bore the burden of establishing either that Claimant's disability ceased or that any remaining disability was unrelated to the work injury. Gillyard v. Workers' Comp. Appeal Bd. (Pa.

---

[5] Our review in a workers' compensation appeal is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Grimm v. Workers' Comp. Appeal Bd. (Fed. Express Corp.), 176 A.3d 1045 (Pa. Cmwlth. 2018) (en banc).

[6] In her list of issues on appeal, Claimant does not include her claim petition concerning her Knee Injury. However, she discusses that issue in her brief. As the record is sufficient to allow consideration of that issue, it is not waived. Pa. R.A.P. 1513(d)(5).

Liquor Control Bd.), 865 A.2d 991 (Pa. Cmwlth. 2005) (en banc).  Employer could satisfy this burden by submitting unequivocal medical evidence that Claimant fully recovered from the work-related injury.  Westmoreland Cty. v. Workers' Comp. Appeal Bd. (Fuller), 942 A.2d 213 (Pa. Cmwlth. 2008).

The WCJ is the ultimate finder of fact in workers' compensation cases.  Thus, questions of credibility and evidentiary weight are within the exclusive province of the WCJ.  A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233 (Pa. Cmwlth. 2013).  It is also the WCJ's function, as the finder of fact, to resolve inconsistencies in the evidence.  Johnson v. Workers' Comp. Appeal Bd. (Abington Mem'l Hosp.), 816 A.2d 1262 (Pa. Cmwlth. 2003).  This includes resolution of conflicting testimony by different witnesses, as well as internal inconsistencies within the testimony of a single witness.  Id.  The WCJ may accept or reject the testimony of any witness in whole or in part.  A & J Builders.  We are bound by those credibility determinations.  Id.

Here, Claimant points to individual pieces of evidence she contends the WCJ improperly credited or failed to credit, which she insists compel factual findings different from those reached by the WCJ.  She also contends Employer's Medical Expert was not credible concerning her recovery from her Back Injury because he amended his earlier opinion concerning the Back Injury.  However, Claimant's factual arguments misapprehend the legal issue before this Court on appeal.  Our inquiry is not whether the record would support findings different from those made by the WCJ.  Id.  "It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether

10

the record contains evidence to support the findings actually made." Furnari v. Workers' Comp. Appeal Bd. (Temple Inland), 90 A.3d 53, 60 (Pa. Cmwlth. 2014). We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. Id. If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. Id. Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. Id.

As demonstrated by the facts set forth at length above, the WCJ cited ample record support for his findings. Regarding the claim petition, the WCJ properly exercised his discretion to credit the evidence offered by Employer that Claimant's Knee Injury did not result in any loss of earning power. See F.F. No. 32. As to the review petition concerning the Back Injury, the WCJ was entitled to credit Employer's evidence that refuted the existence of any injury different from that originally found. See F.F. Nos. 31-32. With respect to the reinstatement petition, the WCJ properly credited Employer's evidence that Claimant's original disability did not continue after April 2016. See F.F. Nos. 29, 32. As for the penalty petition, the WCJ acted within his discretion in finding Claimant failed to demonstrate any violation of the Act by Employer. C.L. No. 15. Notably, the WCJ also expressly found Employer had a reasonable basis for opposing Claimant's petitions. See C.L. No. 17. Finally, regarding Employer's termination petition, the record contained unequivocal medical evidence that Claimant fully recovered from the Back Injury. See F.F. Nos. 29, 31-32. Thus, the record supported the WCJ's finding that Employer sustained its burden in support of termination.

Moreover, Claimant failed to offer unequivocal medical evidence in support of any of her petitions. Accordingly, she also failed to sustain her burdens as a matter of law. See Chick-Fil-A v. Workers' Comp. Appeal Bd. (Mollick), 792 A.2d 678 (Pa. Cmwlth. 2002).

For these reasons, we conclude the Board correctly affirmed the WCJ's decisions.

## IV. Conclusion

Based on the foregoing discussion, the Board's order is affirmed.

_____
ROBERT SIMPSON, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Monica Niculcea, :
Petitioner :
:
v. : No. 968 C.D. 2018
:
Workers' Compensation Appeal :
Board (Stone Ridge Retirement :
Living), :
Respondent :

# **O R D E R**

**AND NOW**, this 27th day of March, 2019, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

ROBERT SIMPSON, Judge