# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Gallagher,              :
            Petitioner      :
                         :
         v.              :   No. 153 C.D. 2021
                         :   Submitted:  July 16, 2021
Abstract Overhead Door Corp.   :
(Workers' Compensation      :
Appeal Board),             :
            Respondent    :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge[1]
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED:  February 17, 2022**

Mark Gallagher (Claimant) petitions for review of the February 1, 2021 Order of the Workers' Compensation Appeal Board (Board), affirming the March 6, 2020 Decision and Order of a Workers' Compensation Judge (WCJ), which granted in part Claimant's Claim and Review Petitions against Abstract Overhead Door Corp. (Employer).  In the Review Petition, Claimant sought to add injuries to the description of his work-related injuries set forth in the Medical-Only Notice of Compensation Payable (MO-NCP) issued by Employer.  In the Claim Petition, Claimant asserted he sustained a partial loss of earnings as a result of these work-

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

related injuries, thereby entitling him to partial disability benefits. The WCJ found that Claimant suffered additional work-related injuries, including injuries to his right arm and an aggravation to his preexisting neck and low back[2] disc disease, but concluded that Claimant had fully recovered from that aggravation as of June 12, 2019, the date of Claimant's Independent Medical Examination (IME) with Leonard Brody, M.D. (Dr. Brody). The WCJ further found that Claimant had not established that his loss of earnings was related to the work-related injuries. On appeal,[3] Claimant argues the Board erred in affirming the WCJ because the WCJ's Decision was not reasoned where it was based on credibility determinations that were arbitrary and capricious, contrary to evidence of record, and not based on substantial, competent evidence. Claimant further asserts that the WCJ's finding of full recovery was not supported by substantial, unequivocal medical testimony and that the WCJ's finding that Claimant sustained no loss of earnings attributable to the work injuries is likewise not supported by substantial, competent evidence. Because the WCJ's credibility determinations were not arbitrary and capricious, the findings were supported by substantial, competent evidence, and those findings supported the WCJ's Decision, we affirm.

## I.    BACKGROUND

### A. *History and Procedure*

Claimant is part-owner of Employer with his wife (Wife), is Employer's Chief Executive Officer (CEO), and works for Employer, which installs residential and commercial garage doors. On March 9, 2017, Claimant sustained injuries while

---

[2] As the WCJ, the Board, and the parties use the terms "neck" and "back" or "low back" interchangeably with the terms "cervical" and "lumbar," we will do the same.

[3] We have reorganized the issues for ease of discussion.

2

performing his work duties. (WCJ Decision,[4] Finding of Fact (FOF) ¶ 3.) Employer, through its workers' compensation (WC) insurer, accepted an injury to Claimant's lower arm described as "Laceration [Cut, scratches, abrasions, superficial wounds, calluses, wound by tearing]" and "(cut/puncture/scrape) object being lifted or handled-the employee was lifting a door when his grip slipped and lacerated his right arm" via the MO-NCP. (Reproduced Record (R.R.) at 1a (emphasis omitted).) On January 11, 2019, Claimant filed the Claim and Review Petitions seeking partial disability benefits from October 21, 2018, and to expand the injury description to include: "lacerations of the right brachioradialis; right carpi radialis; right flexor carpi ulnaris; right palm[a]ris longus and right lateral antebrachial cutaneous nerve; post[-]traumatic carpel tunnel syndrome; status post[-]surgical repairs; aggravation of cervical and lumbar disc disease; and[] bilateral upper extremity radiculopathy." (FOF ¶ 2.) Employer filed answers to the Petitions, denying the material allegations within.

### B. Proceedings Before the WCJ

The Petitions were assigned to the WCJ, who held hearings on March 26, 2019, August 13, 2019, and October 29, 2019. Employer and Claimant appeared and were represented by counsel. Claimant offered his own testimony, the deposition testimony of Christopher M. Belletieri, D.O., (Dr. Belletieri), and documentary evidence regarding Claimant's earnings. Employer presented the deposition testimony of Dr. Brody.

---

[4] The WCJ's Decision is found at pages 247a through 256a of the Reproduced Record.

1. <u>Claimant's Evidence</u>

Claimant testified to the following.[5]  Claimant has owned Employer for 30 years.  Claimant and Wife operate out of an office in their home, and Wife does the payroll.  Claimant runs and operates Employer.  Claimant performed any aspect of the job, which entailed physically furnishing and installing service overhead doors, including "burning, welding, rigging, mechanical disassembly and assembly of overhead doors and docking work," until October 2018.  (R.R. at 27a-28a, 41a.)  On March 9, 2017, while lifting a garage door section made of glass, the door hit something, and Claimant slipped and "tweaked" his back and neck.  (*Id*. at 29a-30a.)  The glass struck Claimant and cut his arm, and Claimant underwent surgery that same day.  Jaykumar Patel, M.D. (Dr. Patel), performed the surgery and continued to treat Claimant thereafter.  (FOF ¶ 3; R.R. at 32a.)  Dr. Patel referred Claimant to physical therapy primarily focused on his arm.  (R.R. at 32a.)  Claimant reported his arm, back, and neck injuries to Employer's WC insurer at the time of the injury, which sent Claimant to the Rothman Institute for diagnostic testing.

For several months following the incident, Claimant performed only administrative work.  However, after six or seven months, Claimant returned to regular installation and maintenance work.  (FOF ¶ 3; R.R. at 38a.)  At the time of the injury, Claimant's salary was $2,800.00 per week, but "Claimant changed his pay in September or October 2018" after medical restrictions of working 4 hours per day, 20 hours per week were imposed by Dr. Belletieri, whom Claimant saw for the

---

[5] Claimant's March 26, 2019 testimony is found at pages 18a through 86a of the Reproduced Record and is summarized in the WCJ's Decision at Finding of Fact 3.  Claimant's October 29, 2019 testimony is found at pages 213a through 231a of the Reproduced Record and is summarized in the WCJ's Decision at Finding of Fact 6.

first time on September 18, 2018, based on a referral from counsel.[6] (FOF ¶¶ 3, 4.) Claimant testified that he had consistent problems with his neck and back following the March 9, 2017 incident. As of October 29, 2019, Claimant continues to treat with Dr. Belletieri on Tuesdays and Thursdays, his condition and restrictions have not changed, and he continues to earn $1400.00 per week working a part-time limited schedule that now consisted of 25 to 30 hours per week performing administrative duties. (FOF ¶ 6.)

Claimant further testified to being in a motor vehicle accident (MVA) sometime around 2008 or 2010, in which he injured his neck and back. Claimant received medical treatment but was discharged from treatment around 2010 or 2012.

On cross-examination, Claimant testified to the following. Claimant treated with Dr. Patel until the summer of 2018, "was able to do his full job," but was self-limiting his work duties prior to coming under Dr. Belletieri's care. (FOF ¶ 3.) At that time, Claimant reduced his hours because Dr. Belletieri decided to reduce Claimant's work from 12 to 16 hours per day to 4 hours per day. Due to the reduction in hours, Claimant and Wife decided to reduce Claimant's salary from $2,800.00 per week to $1,400.00 per week because he began delegating work to others and paying them to do his job. (*Id.*; R.R. at 65a-66a.) He now does only clerical work at a desk four hours per day five days each week, engages in some sales work, and visits job sites to oversee the work "about once or twice a week," but he does not bid on any jobs. (FOF ¶ 3; R.R. at 68a.) Claimant's clerical work consists of reviewing work orders, jobs, purchase orders, purchases, and a schedule. (R.R. at 67a-68a.) Claimant is presently not comfortable lifting anything. (*Id.*)

---

[6] Claimant hired his attorney in the fall of 2018, and his attorney's office referred Claimant for additional medical treatment with Dr. Belletieri at Dedicated Doctors for Claimant's arm, back, and neck. (FOF ¶ 3.)

When Claimant was presented with an office note from Dr. Patel reflecting that Claimant told Dr. Patel his arm was causing back and neck pain, "insist[ing]" that Dr. Patel note this in Claimant's medical records, which Dr. Patel refused to do because he was not a neck and back specialist, Claimant stated that he could not recall if he told Dr. Patel to write about the back and neck pain being caused by the arm injury in his report. (FOF ¶ 3; R.R. at 135a.)[7] Claimant testified that Dr. Patel referred Claimant to Amy Schneider-Lyall, D.O. (Dr. Schneider-Lyall) to be evaluated at the Rothman Institute. As to any MVAs, claims, and injuries which occurred prior to March 9, 2017, Claimant clarified that he was involved in one MVA in 2009 and one in May 2012, both of which resulted in neck and back injuries requiring treatment, although only the May 2012 MVA required a magnetic resonance imaging (MRI) test. (FOF ¶ 3; R.R. at 75a, 78a.) Claimant denied being involved in an MVA in December 2015, and it was unclear if he remembered being in an MVA in 1998. (FOF ¶ 3.)

Claimant also offered the deposition testimony of Dr. Belletieri, which was taken on August 1, 2019.[8] Dr. Belletieri is board certified in family practice and first

---

[7] Dr. Patel's office note stated:

> He wanted me to state that the arm is causing his neck and back problems. I told him that I am not a neck or back surgeon or [a] neurologist who takes care of this problem or a neurosurgeon [who] takes care of this problem. It is outside my field of competenc[y,] and he has already seen a neurosurgeon who he is referred to. . . . After repeated explanation that I am not an expert in treatment of spinal problems[,] he insist[ed] that I write him a note stating that the neck problems are secondary to his arm injury. . . . He also then, in front [of] my secretary at the reception window[,] insisted that I asked him to do press-up exercises. I categorically state that I never asked him to do any such exercises.

(R.R. at 135a.)

[8] Dr. Belletieri's August 1, 2019 deposition testimony is found at pages 87a through 100a of the Reproduced Record and is summarized in the WCJ's Decision at Finding of Fact 4.

examined Claimant on September 18, 2018, after Claimant was referred to Dr. Belletieri by Claimant's attorney. Ten to 15% of Dr. Belletieri's practice consists of treating "patients with traumatic musculoskeletal injuries and other types of musculoskeletal problems," including "[c]ervical [injuries], lumbar injuries, upper extremity [injuries], lower extremit[y injuries,]" and generally injuries to "[e]very body part." (R.R. at 88a.) Claimant presented a history of how the injuries occurred, and that, when he slipped, "he also aggravated his neck and back pain." (FOF ¶ 4.) Claimant reported that he compensates for his injured right arm by using his left more often, "which aggravates his neck and back pain." (*Id*.) Dr. Belletieri performed a physical examination of Claimant, which generally revealed muscle spasms and pain with motion in Claimant's neck and back, reviewed Claimant's medical records, and started Claimant on a physical therapy program at Dr. Belletieri's office. (FOF ¶ 4; R.R. at 90a-91a.) Dr. Belletieri diagnosed Claimant with the injuries that Claimant sought to add to the MO-NCP. (R.R. at 90a.)

Dr. Belletieri agreed that the diagnoses were causally related to Claimant's March 9, 2017 injury and opined that the neck and back aggravation was the result of Claimant compensating for his right arm injury by increasing the use of his left arm. (*Id*. at 91a-92a.) In particular, the right arm injury led to a permanent change in Claimant's anatomy and level of functioning that "changed his body mechanics entirely, [which] led to an aggravation of his preexisting neck and back problems that now limits his ability to perform in several ways." (FOF ¶ 4.) Further, Claimant's preexisting neck and back problems were initially aggravated at the time of injury as a consequence of twisting his back. Regarding restrictions, Dr. Belletieri "stated Claimant really was not able to do anything physical from the time of the injury" and restricted Claimant from performing all of the physical requirements of

7

Claimant's pre-injury job. (*Id*.) Dr. Belletieri limited Claimant to four hours of performing administrative duties per day. (*Id*.) When asked when restrictions were first placed on Claimant, Dr. Belletieri stated, "[y]ou know, because he was the owner of the company[,] I don't know when I originally actually placed official restrictions on him because it was kind of his call." (R.R. at 93a.)

On cross-examination, Dr. Belletieri admitted to not having seen Claimant until September 18, 2018, a year and a half after the work injuries occurred. Dr. Belletieri was shown a medical report from Dr. Schneider-Lyall, who saw Claimant on two occasions, which Dr. Belletieri had never seen before. Dr. Schneider-Lyall's medical report from July 12, 2017, indicated that "there were no restrictions relevant to work as it concerned Claimant's cervical and lumbar spine" and that "[a]s of January 9, 2018, Dr. Schneider-Lyall released Claimant to full-duty work without restrictions as it concerned the neck and back." (FOF ¶ 4.) Upon his review of the reports, Dr. Belletieri indicated their focus was on Claimant's neck and low back injuries and acknowledged that while Dr. Schneider-Lyall opined that Claimant's underlying condition had been exacerbated by the work incident, Dr. Schneider-Lyall did not impose any work restrictions related to those injuries. (R.R. at 96a-97a.) Dr. Belletieri also acknowledged that the January 2018 report indicated that Claimant had not attended any of the scheduled appointments since his visit in the preceding July or pursued the recommended physical therapy. (*Id*.) Dr. Belletieri was asked if he had seen Dr. Patel's office note reflecting Claimant's request to have Dr. Patel opine in Claimant's medical records that Claimant's arm was causing his back and neck pain. (*Id*. at 96a.) Dr. Belletieri explained that he did not review that note, and, on redirect, stated that the note is not something typically seen in a medical chart. (*Id*. at 99a.)

8

## 2. Employer's Evidence

Employer submitted the September 19, 2019 deposition testimony of Dr. Brody.[9] Dr. Brody is a board-certified orthopedic surgeon, who "treat[s] patients with back, neck, and upper extremity injuries . . . [o]n a routine basis." (FOF ¶ 5; R.R. at 142a-43a.) Dr. Brody performed an IME of Claimant on June 12, 2019. At the IME, Claimant provided Dr. Brody with a history of the work incident and the treatment received for Claimant's injuries and acknowledged having had prior neck and back complaints that Claimant asserted became worse after the incident. Dr. Brody performed a physical examination of Claimant, including the cervical and lumbar spine, which revealed overall normal results with no evidence of muscle spasm or neurologic findings.

Dr. Brody also described Claimant's right arm, and Dr. Brody reviewed three MRI reports of Claimant's cervical spine from 2010, 2017, and 2019 that showed degenerative changes. (R.R. at 145a.) Dr. Brody "reviewed an [Electromyogram (]EMG[)] study and reports from Dr. . . . Schneider-Lyall . . . [and] multiple notes from the office of Dedicated Doctors," which is Dr. Belletieri's practice. (FOF ¶ 5; R.R. at 145a-46a.) Dr. Brody reviewed Dr. Patel's operative report in addition to Dr. Patel's office note reflecting Claimant's request to have Dr. Patel state that the arm injury was causing his neck and back problems. (R.R. at 145a, 185a-86a.) Dr. Brody, based on his examination findings, Claimant's history of the work injury, and his review of the records, stated "that the diagnoses related to the work injury included a normal exam in both the cervical and lumbar spine with no evidence of cervical or lumbar radiculopathy." (FOF ¶ 5; R.R. at 146a.) Further, Dr. Brody felt

---

[9] Dr. Brody's September 19, 2019 deposition testimony is found at pages 141a through 154a of the Reproduced Record and is summarized in the WCJ's Decision at Finding of Fact 5.

Claimant's right arm had reached maximal medical improvement. (R.R. at 146a-47a.)

Dr. Brody found no evidence of residual injury regarding Claimant's cervical and lumbar spine, and, therefore, by the time of Dr. Brody's IME, Dr. Brody determined that Claimant had recovered from any neck or back injuries that he possibly suffered as a result of the March 9, 2017 injuries. (FOF ¶ 5; R.R. at 146a.) Dr. Brody placed some restrictions on physical activity on Claimant's right arm, no physical restrictions on the left arm, and no restrictions on the number of hours Claimant could work in a day. Dr. Brody opined that supervisory activity would fit well with Claimant's restrictions. Dr. Brody disagreed with Dr. Belletieri's opinion that Claimant's injuries "consist of aggravation of pre[]existing cervical and lumbar disc problems" because Dr. Brody "found no evidence of any such residual injury," including carpal tunnel syndrome, or that Claimant had suffered cervical radiculopathy. (R.R. at 147a.) On cross-examination, Dr. Brody acknowledged that he did not see Claimant until June 2019 and could not specifically say "to a degree of certainty" whether Claimant sustained an aggravation of the preexisting degenerative disc disease, but he opined that if Claimant did sustain such an aggravation, it had resolved by the time of Claimant's June 12, 2019 IME. (FOF ¶ 5; R.R. at 151a.)

### C. The WCJ's Decision

On March 6, 2020, the WCJ issued the Decision setting forth findings of fact reflecting the factual and procedural background stated above and making the following credibility determinations:

8. This Judge has reviewed and considered the entire testimony of Claimant. Claimant is found to be credible only to the extent of his

10

ongoing restrictions with his right arm based on the testimony of Dr. Brody. Otherwise, Claimant is found to be not credible. As co-owner of [Employer] with his [W]ife[,] it is completely within the discretion of Claimant to determine his compensation. Claimant continued to be paid his regular salary of $2,800.00 per week for a year and a half following the work injury until it was cut in half in October 2018 when Claimant first consulted with Dr. Belletieri, a doctor that his attorney referred him to. Claimant is not credible that he was only able to perform the job duties of a "clerk" for four hours per day because of his work injury. Given Claimant's knowledge and experience as the owner of [Employer] for 30 years and based on the credible medical evidence in this case[,] Claimant was clearly capable of continuing to supervise the work performed by his employees[ and] take care of sales and bidding, among other duties that did not require heavy lifting or even physical activity. Claimant admitted at the October 29, 2019 hearing that not only was he able to increase his hours, despite his doctor not releasing him for more work, but he also admitted it was not necessary for [Employer] to hire any additional personnel to take on what he claims to be a substantial reduction [in his] hours. This Judge finds as significant that Claimant reduced his wages to the extent that coincidentally puts him at nearly the maximum partial disability rate and there is no justification in the record to support how the reduced wage of $1,400.00 per week was arrived at other than it coincided with his reduction in hours. In addition, Claimant testified that he increased his hours to 25 to 30 hours per week, but he was still taking the same salary of $1,400.00 per week. This Judge therefore finds that Claimant has failed to show that he has suffered a wage loss as a result of this work injury.

This Judge further finds that Claimant's testimony concerning his low back and neck is not credible. Claimant reluctantly admitted during his testimony that he received treatment in regard to multiple motor vehicle accidents for his low back and neck over the years. He testified before this Judge that he fell to the ground when he suffered this work injury, which is not consistent with the history he has given to the various medical providers. Furthermore, Dr. Belletieri agreed that Dr. Patel had documented that Claimant sought to have him write a report that his arm is causing his neck and back injuries. Claimant clearly has tried to manipulate the extent of the injuries that would be attributed to the work incident. His ongoing complaints concerning his low back and neck are rejected based on the credible testimony of Dr. Brody.

11

9. This Judge has reviewed and considered the entire deposition of Dr. Belletieri. His testimony and opinions are found to be credible only to the extent they do not conflict with Dr. Brody.

10. This Judge has reviewed and considered the entire deposition of Dr. Brody and finds him to be credible. His opinions are supported by his examination of Claimant and thorough review of the medical records. Dr. Brody's testimony that Claimant has fully recovered from any cervical and lumbar injuries he may have sustained is supported by the reporting of Dr. Schneider-Lyall, including her report from January 9, 2018[,] that Claimant failed to keep scheduled office visits following his initial appointment, and failed to schedule physical therapy as she had recommended. These actions by Claimant undermine his subjective complaints concerning his spine. Dr. Brody's opinions are accepted over those of Dr. Belletieri, an osteopathic [b]oard-certified family practitioner, based on his superior credentials as a [b]oard-certified orthopedic surgeon.

(FOF ¶¶ 8-10.) Based on these credibility determinations, the WCJ found that, in addition to Claimant's right arm injuries, Claimant sustained "an aggravation of cervical and lumbar disc disease." (*Id.* ¶ 11.) However, the WCJ found, as of June 12, 2019, Claimant had fully recovered from this aggravation. (*Id.* ¶ 12.) Further, the WCJ found that "as of October 21, 2018, or any other date," Claimant had not suffered a wage loss as a result of the work-related injuries. (*Id.* ¶ 13.)

The WCJ made the following conclusions of law. The WCJ concluded that Claimant had shown that the description of the injury should be expanded, including "aggravation of cervical and lumbar disc disease." (Conclusions of Law (COL) ¶ 2.) However, Employer had shown that "as of June 12, 2019, Claimant was fully recovered from the aggravation of his lumbar and cervical disc disease." (*Id.* ¶ 3.) As such, Employer remains responsible for medical treatment related to the right arm injury but not for any neck or back condition. (*Id.* ¶ 5.) Accordingly, the WCJ granted the Claim and Review Petitions in part and ordered Employer to pay for medical treatment for Claimant's right arm injury. (WCJ Decision at 10.)

12

*D. The Board's Opinion*[10]

Claimant appealed to the Board. Claimant first challenged the WCJ's finding that Claimant had fully recovered from the aggravation of the preexisting cervical and lumbar injuries as not being supported by substantial, competent evidence. The Board disagreed, explaining that while Claimant met his burden of proving an aggravation of his lumbar and cervical disc disease through the part of Dr. Belletieri's testimony found credible, Claimant did not prove that his disability was ongoing because the WCJ did not credit Dr. Belletieri's opinion that this aggravation remained an issue and required restrictions on Claimant's work duties or Claimant's testimony regarding the ongoing nature of those injuries. (Board Opinion (Op.) at 7 (citations omitted).) Instead, the Board held, the WCJ found "Dr. Brody to be credible that Claimant had fully recovered from any injuries to his neck or back that he may have sustained on March 9, 2017." (*Id.*) As Dr. Brody's credited testimony supported this finding, the Board held there was no error in the WCJ's finding upon which to reverse.

Claimant next challenged the WCJ's finding that Claimant sustained no loss of earnings as a result of the work-related injuries. Again, the Board disagreed, concluding that substantial, competent evidence supported this finding, which precluded the grant of partial disability benefits. The Board cited Claimant's ability to perform modified work given his knowledge and experience as owner of Employer for 30 years, as set forth in the WCJ's finding of fact 8, supporting the WCJ's finding that Claimant's loss of earnings was not associated with the work injuries. (*Id.* at 8.) The Board also cited credible medical evidence showing that Claimant was capable of continuing to supervise his employees, taking care of

---

[10] The Board's Opinion is found at pages 262a through 272a of the Reproduced Record.

bidding and sales, and performing other duties that did not require heavy lifting or physical activity, among other factors, supporting the WCJ's finding. (*Id.*) In addition, the Board pointed out that Dr. Belletieri could "not recall when he placed restrictions on Claimant, [] that it was Claimant's call since he was owner of the company" and that, while Dr. Belletieri "would be flexible" with the restrictions, it was Claimant's company and Dr. Belletieri would amend the restrictions if Claimant "felt that he wanted to" work more. (*Id.*) The Board also cited Dr. Brody's credited testimony that he placed no hourly restrictions on Claimant and that Claimant's "supervisory activities fit well into [Dr. Brody's] restrictions." (*Id.*) The Board held that this testimony supported the WCJ's finding that Claimant did not sustain a wage loss related to the work-related injuries. (*Id.*)

Accordingly, the Board affirmed the WCJ's Decision. Claimant now petitions this Court for review.[11]

## II. DISCUSSION

Claimant argues on appeal that the WCJ's Decision is not reasoned, as required by Section 422(a) of the Workers' Compensation Act (Act),[12] 77 P.S. § 834, because the WCJ's credibility determinations are not supported by substantial evidence and are, therefore, arbitrary and capricious. Claimant further maintains the record lacks substantial, competent evidence to support the WCJ's findings that Claimant had fully recovered from the work-related aggravation of the preexisting cervical and lumbar disc disease and that Claimant sustained no loss of earnings due

---

[11] Our scope of review in WC matters "is limited to determining whether constitutional rights have been violated, whether an error of law has been committed[,] and whether all necessary findings of fact are supported by substantial evidence." *Archer v. Workmen's Comp. Appeal Bd. (Gen. Motors)*, 587 A.2d 901, 903 (Pa. Cmwlth. 1991).

[12] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

14

to the work-related injuries. Employer responds that the WCJ did not err in finding that Claimant did not meet his burdens of proving an ongoing work-related injury to his preexisting cervical and lumbar spine or that the wage loss Claimant suffered was the result of his work injuries where Claimant's evidence was not accepted as credible. According to Employer, the challenged credibility determinations and factual findings are supported by substantial, competent evidence and Claimant seeks to have this Court reweigh or reinterpret the evidence in Claimant's favor, which is contrary to the standard for appellate review in WC matters.

Here, Claimant filed the Claim and Review Petitions seeking to change the description of his work-related injuries as set forth in the MO-NCP and to dispute that the work-related injuries resulted in "no loss of wages." (R.R. at 1a-2a (emphasis omitted).) A party seeking to alter the description of an injury on an NCP bears the burden to prove "that a material mistake of fact or law was made at the time the NCP was issued," *Anderson v. Workers' Compensation Appeal Board (Pennsylvania Hospital)*, 830 A.2d 636, 641 (Pa. Cmwlth. 2003), or that subsequent injuries have arisen from the original injury, *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 580-81 (Pa. 2009).[13] A review petition is appropriate where a claimant seeks to amend an NCP to reflect further injuries. *Id.* at 581. A claim petition is filed when a claimant "believes that a work injury is causing a loss of earning power." *Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs., Inc.)*, 126 A.3d 394, 402 (Pa. Cmwlth. 2015) (citation omitted).

---

[13] The first scenario, referred to as a corrective amendment, may be granted by a WCJ in the course of any proceedings if the evidence so warrants. *Cinram Mfg.*, 975 A.2d at 580-81. The second scenario requires the filing of a specific review petition seeking to amend the NCP. *Id.* at 581.

15

To support an award of disability benefits, a claimant must prove that they "sustained a work injury which resulted in disability, i.e., a loss of earning power." *Id*. "Unless the causal connection between an injury and disability is obvious, unequivocal medical evidence is needed to establish that connection." *Id*. Further, a claimant must establish that they sustained an injury during the course and scope of their employment and that the injury is causally related to the employment. *Delaware Cnty. v. Workers' Comp. Appeal Bd. (Baxter Coles)*, 808 A.2d 965, 967-68 (Pa. Cmwlth. 2002) (citation omitted). The claimant also has the burden of establishing the duration of disability and must, where not obvious, "establish[] ongoing disability by the presentation of unequivocal medical evidence." *Wagner v. Workers' Comp. Appeal Bd. (O'Malley Wood Prods., Inc.)*, 805 A.2d 683, 684 (Pa. Cmwlth. 2002). Thus, under these standards, Claimant bore the initial burden of proving, through credible, unequivocal medical evidence, that: (1) the MO-NCP's description of the work-related injuries was incorrect; and (2) he sustained work-related injuries that caused an ongoing disability. *Wagner*, 805 A.2d at 684; *Baxter Coles*, 808 A.2d at 967-68.

A.      *Reasoned Decision and the WCJ's Credibility Determinations*

Claimant first argues that the WCJ erred in finding that Claimant did not meet these above burdens of proof because the WCJ's credibility determinations rejecting Claimant's evidence are not supported by substantial evidence and are, therefore, arbitrary and capricious. According to Claimant, these unsupported, arbitrary, and capricious determinations violate the reasoned decision requirements of Section 422(a) of the Act. As to himself, Claimant challenges three of the WCJ's reasons as not being supported by the record: (1) the characterization of Claimant's testimony

16

regarding his past "multiple" MVAs and related injuries as being reluctant; (2) the finding that Claimant's testimony that he "fell to the ground when he suffered this work injury" was "not consistent with the history [Claimant gave] to the various medical providers"; and (3) the finding that Claimant had "clearly tried to manipulate the extent of the injuries . . . attributed to the work incident" by asking Dr. Patel to state that the right arm injury was causing the neck and back injuries. (FOF ¶ 8.) As to the medical experts, Claimant argues the following reasons given for crediting Dr. Brody's testimony over that of Dr. Belletieri were likewise not supported by substantial evidence: (1) Dr. Brody's more thorough assessment of Claimant and review of the medical records; (2) the reliance on Dr. Schneider-Lyall's January 9, 2018 report reflecting that Claimant did not keep scheduled office visits and did not schedule recommended physical therapy; and (3) Dr. Brody's qualifications in comparison to Dr. Belletieri's qualifications.

Employer responds that as to the WCJ's credibility determination concerning Claimant, such determination properly summarized the evidence, was based on more than just the three challenged reasons, and was based on Claimant's demeanor, in addition to many different aspects of Claimant's testimony. As to the medical experts, Employer argues that the WCJ properly found Dr. Brody credible based on his superior qualifications and his assessment of the medical records. Further, Employer posits that the WCJ's reliance on Dr. Schneider-Lyall's report, specifically concerning whether Claimant pursued follow-up treatment, is "an issue of interpretation of the evidence," and thus it is properly within the purview of the WCJ. (Employer's Brief (Br.) at 21.)

Section 422(a) of the Act provides that all parties in a WC case "are entitled to a reasoned decision containing findings of fact and conclusions of law based upon

the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. § 834. The decision of a WCJ is "reasoned" if it allows for meaningful appellate review without further elucidation. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). In the instant matter, Claimant's reasoned decision challenge is based on his assertion that the WCJ's credibility determinations were arbitrary and capricious.

When reviewing credibility determinations, we are guided by the following principles. It is well settled that

> [t]he WCJ is the fact[]finder, and it is solely for the WCJ . . . to assess credibility and to resolve conflicts in the evidence. Neither the Board nor this Court may reweigh the evidence of the WCJ's credibility determinations. In addition, **it is solely for the WCJ, as factfinder, to determine what weight to give to any piece of evidence**. . . . As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted.

*Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Emp. Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017) (third and fifth alterations in original) (emphasis added) (internal citations, quotations, and brackets omitted). "An appellate tribunal must view the WCJ's reasoning as a whole and may overturn a credibility determination only if it is arbitrary and capricious, so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *W. Penn Allegheny Health Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (citing *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14 (Pa. Cmwlth. 2008)). "The [WCJ] is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Greenwich Collieries v.*

*Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995) (citation omitted). A WCJ's observation of a witness's demeanor alone may be the basis of a credibility decision and such observation is sufficient to satisfy the reasoned decision requirement. *Daniels*, 828 A.2d at 1052-53. Where a WCJ's finding of fact is supported by substantial evidence, based on a review of the record and the reasonable inferences therefrom, and in the light most favorable to the party that prevailed before the WCJ, it may not be overturned. *Cochenour*, 251 A.3d at 475 (citations omitted). "[S]ubstantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted). "Mere speculation or conjecture is insufficient to support a factual finding," but if the finding is based on a reasonable and logical inference from the evidence, even if that is not the only finding that could come from that inference, that finding is supported by substantial evidence. *Id.* (citations omitted). "[I]t is immaterial that there is evidence in the record supporting a factual finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding." *Id.*

Applying these standards here, we hold that none of the factors that would allow interference with the WCJ's credibility determinations exist. We begin with the challenges to the WCJ's findings as to Claimant's testimony. First, concerning the asserted mischaracterization of Claimant's testimony about the prior MVAs and related injuries as being reluctant because, Claimant asserts, he testified about these topics on direct examination, we agree with Employer that such characterization was based on the WCJ's observation of Claimant's demeanor while answering those questions. In short, the WCJ observed Claimant personally and gauged Claimant's demeanor during that testimony, *Daniels* 828 A.2d at 1052-53, and describing that

testimony as having been given "reluctantly," (FOF ¶ 8), does not render that reason arbitrary or capricious, *Cochenour*, 251 A.3d at 475. Further, while Claimant challenges the use of the word "multiple" to refer to his two MVAs, "multiple" is defined as "consisting of, including, or **involving more than one**." Merriam-Webster's Collegiate Dictionary 762 (10th ed. 2001) (emphasis added). As two, and perhaps three, is more than one, we discern no abuse of discretion in the WCJ referring to Claimant as having had multiple MVAs. Finally, that Claimant reported those accidents to Dr. Brody and Dr. Schneider-Lyall does not preclude the WCJ from considering Claimant's testimony on these topics as being reluctant.

Second, concerning the challenge to the WCJ's determination that Claimant's testimony that he fell to the ground and was injured was inconsistent with the history Claimant gave to some medical providers, a review of the record, in the light most favorable to Employer as the party that prevailed before the WCJ, supports that finding. *Cochenour*, 251 A.3d at 475. In his deposition testimony, Dr. Belletieri described the history Claimant related, but absent from that testimony is a reference to Claimant falling. (R.R. at 89a.) Further, as Claimant acknowledges in his brief, Dr. Brody was initially unable to recall whether Claimant told him that he slipped and fell during the accident, although Dr. Brody eventually agreed this history was not inconsistent with the history Claimant gave. (R.R. at 148a; Claimant's Br. at 15.) However, Dr. Brody's inability to recall is not surprising because his IME Report, drafted contemporaneously with his examination of Claimant, does not reflect that Claimant told Dr. Brody of a fall. (R.R. at 183a.) Thus, the record contains evidence that a reasonable person would find adequate to support a conclusion, i.e., substantial evidence, that Claimant did not tell some of the medical providers that he fell.

20

Third, as to the WCJ's finding that Claimant tried "to manipulate the extent of the injuries that would be attributed to the work incident" by asking Dr. Patel to relate Claimant's neck and back pain to the right arm injury, this finding is supported by substantial evidence. During his testimony, Claimant claimed to not recall having this conversation with Dr. Patel, but Claimant now describes his request as simply "advocating for himself." (Claimant's Br. at 16-17.) While Claimant characterizes his **repeated** requests for a non-back and neck specialist to act outside that physician's field to add injuries to the accepted work injury as "advocating for himself," (*id.*), a reasonable person could view those requests, in the light most favorable to Employer, as adequate to support the conclusion that Claimant was trying to manipulate the extent of his work injuries, as found by the WCJ. Thus, that finding is supported by substantial evidence.

Turning to the challenges to the WCJ's findings related to the medical experts' credibility, we likewise conclude the record evidence, including the reasonable inferences drawn therefrom, support the WCJ's findings. First, as to Claimant's challenge based on the WCJ's reliance on Dr. Brody's physical examination of Claimant and review of Claimant's medical records because, Claimant argues, other records showed abnormal examinations and spasms, it is of no moment that the record contains evidence that would support a different finding. *Cochenour*, 251 A.3d at 475. Dr. Brody testified that his examination of Claimant's neck and low back were normal and that, to the extent that other reports showed otherwise, he disagreed with their findings. (R.R. at 152a-54a.) Further, to the extent that other physicians did not find Claimant fully recovered, (Claimant's Br. at 20), Dr. Brody opined to the contrary. This opinion was not based on mere speculation or conjecture, but on Dr. Brody's personal examination of Claimant and review of

21

Claimant's medical records, including MRIs from 2010, 2017, and 2019, x-ray studies of March 9, 2017, Dr. Patel's pre- and post-operative reports and office notes, EMG studies from May 30, 2017, and June 11, 2019, Dr. Schneider-Lyall's July 13, 2017 and January 9, 2018 reports, and records from Dr. Belletieri's office. (R.R. at 145a-46a.) Thus, it cannot reasonably be said that this finding is not supported by substantial evidence such that it was an abuse of the WCJ's discretion as factfinder to resolve evidentiary disputes, especially those involving medical witnesses. *Greenwich*, 664 A.2d at 706.

Second, Claimant disputes the WCJ's finding that Dr. Brody's opinion of full recovery is supported by the facts, as recorded in Dr. Schneider-Lyall's January 9, 2018 report, that Claimant failed to keep scheduled office visits and "failed to schedule physical therapy as . . . recommended," because such failures "undermine [Claimant's] subjective complaints concerning his spine." (FOF ¶ 10.) Claimant argues that because Dr. Schneider-Lyall did not find Claimant fully recovered on January 9, 2018, but prescribed additional treatments, the report "in no way supports a finding of full recovery." (*Id*.) However, the WCJ's finding is based on the inference that, had Claimant's complaints about his neck and back been as bad as he claimed, Claimant would have attended those appointments and treatments. Having not done so, the WCJ inferred that the neck and back issues were not as bad as claimed and, as such, Dr. Brody's finding of full recovery in June 2019, more than a year and a half later, was consistent with a less serious injury. We cannot say that the WCJ's inference is unreasonable, and, because a reasonable person might accept

22

that as evidence sufficient to support the WCJ's finding, that finding is supported by substantial evidence.[14] *Cochenour*, 251 A.3d at 475.

Third, Claimant challenges the WCJ's acceptance of Dr. Brody's opinion that Claimant had fully recovery based "solely" on Dr. Brody's qualifications as a board-certified orthopedic surgeon. (Claimant's Br. at 23-24.) This is simply inaccurate because Dr. Brody's qualifications were but one of several reasons why the WCJ found Dr. Brody more credible. (FOF ¶ 10.) The differences in the specialties of Dr. Brody and Dr. Belletieri reflect that while Dr. Brody treats neck, back, and upper extremity issues daily, those injuries account for only 10 to 15% of Dr. Belletieri's practice. (R.R. at 88a, 143a.) Accordingly, the differences in qualifications cannot be said to be a flawed or irrational basis for giving Dr. Brody's testimony greater weight.

In sum, the WCJ's credibility determinations are supported by substantial evidence, not based on mere speculation, conjecture, or a misapprehension of material facts or are otherwise so flawed that they are rendered irrational. *Cochenour*, 251 A.3d at 475. Therefore, they are not arbitrary and capricious and must be upheld. *Id.* Because the WCJ's credibility determinations are not arbitrary and capricious and allow for adequate appellate review, the WCJ's Decision is reasoned for the purposes of Section 422(a).

### B. Finding of Full Recovery

Claimant next argues that the WCJ erred in finding that Claimant "fully recovered from the aggravation of his pre[]existing cervical and lumbar disc

---

[14] To the extent Claimant offered alternative bases for why he did not attend those appointments, it is immaterial if the record contains evidence that supports a contrary conclusion if the finding made is supported by substantial evidence. *Cochenour*, 251 A.3d at 475.

disease." (Claimant's Br. at 24.) Claimant contends that Dr. Brody's entire testimony is "equivocal and therefore not competent or credible as a matter of law," rendering Dr. Belletieri's testimony and opinions unrebutted and supporting the conclusion that Claimant sustained ongoing work-related neck and back injuries that resulted in an ongoing partial loss of earnings. (*Id.* at 24, 26-27.) Employer responds that the WCJ's findings regarding the testimony of Dr. Brody are supported by substantial evidence of record and that the testimony that Claimant was fully recovered from any neck or low back injury that may have occurred was unequivocal.

Claimant bore the burden of proving through credited, unequivocal medical evidence that he sustained a disabling injury in the course of his employment and that such injury and disability **remained ongoing**. *Ingrassia*, 126 A.3d at 402; *Wagner*, 805 A.2d at 684. Unequivocal medical testimony is testimony by a medical expert who, after providing a foundation, states "that in his professional opinion or that he believes or that he thinks the facts exist." *Johnson v. Workers' Comp. Appeal Bd. (Abington Mem'l Hosp.)*, 816 A.2d 1262, 1267 (Pa. Cmwlth. 1997) (quoting *Phila. Coll. of Osteopathic Med. v. Workmen's Comp. Appeal Bd. (Lucas)*, 465 A.2d 132, 134 (Pa. Cmwlth. 1983)). "It is not the law . . . that every utterance which escapes the lips of a medical witness on a medical subject, must be certain, positive, and without reservation, exception, or peradventure of a doubt." *Lucas*, 465 A.2d at 134-35. Rather, the testimony must be viewed as a whole, and a decision should not turn on a few words taken out of context. *Johnson*, 816 A.2d at 1268. "Whether medical testimony is equivocal is a question of law." *Id.* at 1267. As the *Lee* Court stated, "[i]f the testimony is based only upon possibilities, then that testimony is equivocal and not legally competent to establish a causal relationship." *Somerset*

24

*Welding & Steel v. Workmen's Comp. Appeal Bd. (Lee)*, 650 A.2d 114, 117 (Pa. Cmwlth. 1994) (citation omitted).

In support of his argument, Claimant quotes a small portion of Dr. Brody's testimony in which Dr. Brody responded to the question of whether Claimant sustained an aggravation of a preexisting condition on March 9, 2017, as follows: "Well, I didn't lay eyes on the patient until June 12, 2019. So, I could not answer that question to a degree of certainty." (R.R. at 151a.) Claimant argues that this response "could not have been any more equivocal." (Claimant's Br. at 25.) However, Claimant's argument takes a few words from Dr. Brody's testimony out of context, and what Dr. Brody actually said was:

> [w]ell, I didn't lay eyes on the patient until June 12[], 2019. So, I could not answer that question to a degree of certainty, **but I can tell you to a degree of certainty that if he had such an exacerbation, that it was my opinion as of June 12[], 2019, any such exacerbation had resolved.**

(R.R. at 151a (emphasis added).) Examined as a whole and in context, Dr. Brody's testimony was unequivocal because Dr. Brody provided a foundation for his opinion and explained why he believed the aggravation of Claimant's preexisting condition had resolved by June 12, 2019. *Johnson*, 816 A.2d at 1267-68. Dr. Brody essentially accepted that an aggravation had occurred at the time of the initial incident, thus providing support for the WCJ's acceptance of Dr. Belletieri's testimony and opinions as credible "to the extent they do not conflict with Dr. Brody['s]." (FOF ¶ 9.) This testimony supported the WCJ's finding that Claimant did sustain a work-related aggravation of his preexisting neck and low back conditions. As to the ongoing nature of that aggravation, however, Dr. Brody's and Dr. Belletieri's testimony and opinions conflicted. Dr. Brody specifically opined, based on

Claimant's normal physical examination of the neck and low back, Claimant's medical records, and Dr. Brody's expertise, that any aggravation that had occurred had resolved by the time Dr. Brody examined Claimant. This testimony provides a foundation for Dr. Brody's professional opinion that a fact – Claimant's full recovery from the aggravation – exists. Further, it cannot reasonably be said that the testimony was "based only upon possibilities." *Lee*, 650 A.2d at 117. As such, Dr. Brody's testimony regarding Claimant's full recovery is unequivocal and constitutes substantial evidence that supports the WCJ's finding that Claimant's aggravation injury had resolved. While Claimant is correct that Dr. Belletieri opined that the aggravation remained symptomatic and disabling, which would have satisfied Claimant's burden of proof, the WCJ did not find Dr. Belletieri credible in this regard. The WCJ, as factfinder, was free to accept or reject Dr. Belletieri's testimony in whole or in part. *Greenwich*, 664 A.2d at 706. Because Claimant's medical evidence about the ongoing work-related aggravation was not credited, and as Dr. Brody's opinion of full recovery was unequivocal and credited, Claimant could not meet his burden of proof on the Claim Petition after June 12, 2019.

*C. Finding No Loss of Earnings as a Result of the Work Injuries*

Claimant finally contends that the WCJ erred in finding that any loss of earnings Claimant suffered was not the result of the work-related injuries because that finding is not supported by substantial evidence, is arbitrary, and does not evince a reasoned decision. Claimant asserts many reasons why the WCJ erred in not finding a compensable loss of earnings, ranging from how the restriction of his work duties and reduction in salary were justified, to there being no evidence that other workers did not increase their hours to make up for his work restrictions, and to why the reduction in his hours and duties was delayed until October 21, 2018, after he

26

obtained counsel because of Employer's refusal to acknowledge the worsening aggravation injury. Claimant further disputes the WCJ questioning the motives around the amount of his reduction in wages and claims he is being treated unfairly because he is part-owner of Employer. (Claimant's Br. at 27-35.) Employer responds that the WCJ's Decision is reasoned, supported by substantial evidence, and "touch[es] upon nearly all aspects of [Claimant's] testimony," including providing a myriad of reasons for rejecting Claimant's testimony as not credible. (Employer's Br. at 10-11.)

After reviewing the record and drawing the reasonable inferences deducible therefrom in the light most favorable to Employer, there is substantial evidence to support the WCJ's findings. Although Claimant contends he was not in control of setting the amount of pay and hours worked, that contention is belied by his own testimony that he made the decision to reduce his salary and the extent of that reduction. (R.R. at 66a.) Like the WCJ, we find it telling that while Claimant argues that the reduction of wages was completely related to his reduction in hours, Claimant admitted to increasing his hours from 25 to 30 hours per week without making a corresponding increase in his salary. (*Id.* at 224a.) In doing so, Claimant retained the level of salary that "coincidentally," (FOF ¶ 8), placed him at nearly the maximum partial disability rate. The inconsistency in Claimant's testimony and the inferences that could be drawn from that inconsistency support the WCJ's finding that the loss of earnings was not related to a reduction in hours due to the physical restrictions of Claimant's work injuries.

Moreover, additional support for the finding regarding Claimant's ability to control his restrictions and salary is found elsewhere in the record. Dr. Belletieri testified that he was willing to be more flexible about the restrictions on Claimant's

27

abilities but deferred to Claimant, stating "[l]isten, it's his company. I would be flexible. If he felt that he wanted to, I might amend that, but at this point that's the restriction I put on him." (R.R. at 98a.) Notably, even when Claimant was first recovering from the hand surgeries and related restrictions, Claimant did not reduce his salary and performed his work duties with some restrictions. And, during the initial treatment of the aggravation injury, Dr. Schneider-Lyall imposed **no work restrictions** related to that injury. (*Id.* at 97a.) It was only after Claimant obtained counsel that he reduced his wages and sought WC disability benefits to replace those losses.

As for the WCJ's disbelief that Claimant was capable, both physically and professionally, of performing only administrative work 20 hours per week as a clerk, we discern no abuse of discretion or legal error. That disbelief was based on Claimant's admitted knowledge and experience as co-owner of Employer for 30 years, from which the WCJ inferred that Claimant had abilities beyond completing paperwork even with his physical restrictions. The medical evidence reflected that Claimant is capable of supervising the work performed by Employer's other workers, taking care of sales and bidding, and performing any "other duties that did not require heavy lifting or" physical activity. (FOF ¶ 8.) Further, Claimant's contention that he could only work 20 hours per week is contradicted by the facts that Claimant increased his hours "despite his doctor not releasing him for more work" and admitted it was not necessary to hire additional employees. (*Id.*)

Reviewed as a whole, we conclude that a reasonable person might accept this evidence as sufficient to support the WCJ's finding that Claimant's loss of earnings, which began in October 2018, was not caused by the work-related injuries. Thus, the WCJ's finding was based on substantial evidence and was not arbitrary and

28

capricious. As to Claimant's related contention that the WCJ's Decision is not reasoned due to these findings, this is not the case because the WCJ provided ample explanation for the findings of fact and conclusions of law, thereby allowing for adequate appellate review. 77 P.S. § 834.

## III. CONCLUSION

Based on the foregoing, there was no abuse of discretion in the WCJ's credibility determinations or legal error in the WCJ's findings that Claimant had fully recovered from the aggravation of Claimant's preexisting neck and low back injuries and did not sustain a wage loss as a result of the March 9, 2017 work injuries. Rather, those findings were supported by substantial, credible, and competent evidence, and, accordingly, we affirm.

 

**RENÉE COHN JUBELIRER**, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Gallagher,               :
             Petitioner    :
                        :
         v.            :    No. 153 C.D. 2021
                        :
Abstract Overhead Door Corp.   :
(Workers' Compensation       :
Appeal Board),             :
            Respondent   :

## O R D E R

    **NOW**, February 17, 2022, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

                                    _____
                                    **RENÉE COHN JUBELIRER,** Judge